Affirmed and Majority and Concurring Opinions filed July 25, 2002









Affirmed
and Majority and Concurring Opinions filed July 25, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-00-00699-CR

____________

 

TIMOTHY M. KENDRICK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 178th District Court

Harris County, Texas

Trial
Court Cause No. 803,335

 



 

M A J O R I T Y   O P I
N I O N

Appellant, Timothy M. Kendrick, was charged by indictment
with the offense of possession of at least 400 grams of cocaine with the intent
to deliver.  A jury found appellant
guilty of the charged offense, and the trial court assessed punishment at
thirty years confinement in the Institutional Division of the Texas Department
of Criminal Justice and a $500 fine.  In
three points of error, appellant complains the trial court erred in overruling
his motion to suppress and the evidence was legally and factually insufficient
to support his conviction.  We affirm.

FACTUAL BACKGROUND 

Officer Deanna Harmon and Officer Billy Corley worked
interdiction at Intercontinental Airport. 
Officer Harmon had served in the police department’s narcotics division
for seventeen years; and Officer Corley, for fourteen years.  On January 21, 1999, Officer Corley observed
appellant arrive at the airport by taxi and hurriedly enter the terminal.  The officers noticed appellant’s pants and
shirt were extremely baggy.  Appellant
seemed nervous, looking at people around the airport in an effort to see
whether someone was watching him. 
Appellant approached a ticket agent and then walked away.  He then approached a second ticket
agent.  Subsequently, appellant used a
payphone and then returned to the second ticket agent and left for another
terminal.  

Once appellant departed, Officer Corley spoke with the two
ticket agents.  The first agent informed
Corley appellant did not know his destination or the airline on which he was
flying.  Appellant knew only a ticket was
waiting for him.  The second agent
informed Corley that, after appellant made the phone call, he learned he was
flying to Toledo on American Airlines. 
Officer Harmon observed appellant enter the second terminal and approach
the American Airlines ticket counter. 
Appellant appeared extremely nervous, fidgety, and continuously pulled
down on the front of his baggy shirt. 
Harmon noticed appellant=s luggage did not contain an identification tag.

After appellant received his ticket, Officer Harmon
approached the counter and obtained a copy of appellant=s flight information.  Harmon called the phone number listed on
appellant=s itinerary and learned it was not a
working number.  Moreover, she checked
the identification number listed on appellant=s itinerary and learned the number
was invalid.  The officers went to
appellant=s departure gate and found appellant
sitting alone.  Appellant placed his
suitcase on his lap.  The officers found
this conduct unusual because the suitcase was large and appellant=s flight was not scheduled to depart
for another two hours.








After observing appellant engage in numerous suspicious
activities, the officers approached him, introduced themselves, and engaged him
in conversation.  Appellant had at that
time passed through the metal detectors at the airport.  Eventually, Officer Harmon asked appellant to
look in his bag.  Initially, appellant
refused the request, then agreed, and subsequently changed his mind again
because he didn=t want her “messing with his stuff.”  When Harmon asked appellant whether he would
allow a narcotics canine to sniff his baggage, he initially agreed to the
procedure, however, later changed his mind. 
At this point, Harmon decided to detain appellant.

Officer Corley asked appellant whether he could pat him
down.  Appellant stood up and raised his
hands.  Officer Corley then patted
appellant down and detected a large solid brick object located on the inside of
appellant’s leg.  Believing the object
was narcotics, the officers arrested appellant and transported him to their
office.  After obtaining a search
warrant, the officers searched appellant=s body and found a kilogram of
cocaine taped to his leg.  In addition,
marijuana cigarettes were attached to the brick of cocaine.

Appellant moved to suppress the physical evidence.  Following a hearing, the trial court
overruled the motion.

DISCUSSION 

I.

Motion to Suppress

In his first point of error, appellant contends the trial
court erred in denying his motion to suppress. 
Appellant maintains the cocaine was obtained as the result of an
unlawful Terry search.  See
Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).  Specifically, appellant claims the officers
did not have reasonable suspicion to search appellant for weapons.[1]








The trial court did not set forth findings of fact and
conclusions of law in support of its ruling. 
On appeal, the State argues the search was consensual.  Alternatively, the State argues the search
was a valid Terry search because the officers had reasonable suspicion
appellant was armed and dangerous.

We review a trial court=s decision on a motion to suppress
under an abuse of discretion standard.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  We should give almost total deference to a
trial court=s determination of historical facts
supported by the record, especially when the trial court=s fact findings are based on an
evaluation of credibility and demeanor.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We should also give the same amount of
deference to the trial court=s ruling on “application of law to fact questions”Calso known as “mixed questions of law
and fact”Cif the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor.  Id. 
An appellate court reviews de novo “mixed questions of law and fact” not
falling within this category.  Id.  If, as here, the trial court does not file
findings of fact and conclusions of law, we presume the trial court made the
findings necessary to support its ruling so long as those implied findings are
supported by the record.  Zarychta v.
State, 44 S.W.3d 155, 163 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d), cert. denied, ___ U.S.
___, 122 S. Ct. 2312 (2002).

Under the Fourth and Fourteenth Amendments to the United
States Constitution, a search conducted without a warrant issued with probable
cause is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S.
218, 219, 93 S. Ct. 2041, 2043 (1973). 
Consent to search, however, is one of the well‑established
exceptions to the constitutional requirements of both a warrant and probable
cause.  Id., 412 U.S. at 219, 93
S. Ct. at 2043B44; Carmouche v. State, 10
S.W.3d 323, 331 (Tex. Crim. App. 2000). 
The test for a valid consent to search requires the consent to be
voluntary, and voluntariness is a question of fact to be determined from all
the circumstances.  Schneckloth,
412 U.S. at 248B49, 93 S. Ct. at 2059; Carmouche, 10 S.W.3d at
331.  For consent to be voluntary, it
must not be coerced, by explicit or implicit means, by implied threat or covert
force.  Carmouche, 10 S.W.3d at
331.  Under the Texas Constitution, the
State is required to prove by clear and convincing evidence that consent was
voluntarily given.  State v. Ibarra,
953 S.W.2d 242, 243 (Tex. Crim. App. 1997).

Reviewing the record in the light most favorable to the trial
court’s ruling, we conclude the State met its burden of demonstrating by clear
and convincing evidence that appellant consented to a pat-down search.  Officer Corley requested appellant=s permission to conduct a pat-down,
and appellant stood up and raised his hands, indicating his consent.  See McAllister v. State, 34 S.W.3d 346,
351 (Tex. App.CTexarkana 2000, pet. ref’d)
(concluding defendant consented to search when, after officer told defendant he
had to conduct a pat-down search, defendant raised his hands indicating officer
was free to proceed).  There is
sufficient evidence appellant was under no compulsion to accept Corley=s request; in fact, the record
indicates appellant refused the previous requests to search his luggage and the
succeeding request to subject his luggage to a canine sniff search.  When appellant raised his hands, he indicated
Corley was free to proceed with a pat‑down search and thus consented to
the search.  Moreover, Officer Harmon was
wearing plain clothes, no weapons were drawn or displayed, and appellant was
not threatened by the officers in any way. 
There was not a hint of coercion or implied force during the encounter
leading up to appellant=s consent to the search.

Having decided appellant consented to the search, we need not
decide whether the search was valid under the State=s alternative theory of a Terry
frisk.  We overrule appellant’s first
point of error.

II.

Sufficiency of the Evidence

In his second and third points of error, appellant challenges
the legal and factual sufficiency of the evidence to support his
conviction.  Appellant, however, is not
challenging the sufficiency of the evidence of any of the elements of the
substantive offense of possession of at least 400 grams of cocaine with intent
to deliver.

Instead, appellant focuses on the jury instruction given
under Texas Code of Criminal Procedure article 38.23(a), which provides:

No evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the State of Texas,
or of the Constitution or laws of the United States of America, shall be
admitted in evidence against the accused on the trial of any criminal case.

 

In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.

 

Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.
2002).  The jury instruction in the
present case read:

You are instructed that no evidence obtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or laws of the United States
of America, shall be admitted in evidence against the accused on the trial of
any criminal case.

You are further instructed that before an officer has
the right to make a temporary investigative detention of a defendant, the
officer must have a reasonable suspicion that the defendant is connected with
some criminal activity that is or has occurred. 
To justify an investigative detention, an officer must have specific
articulable facts, which taken together with rational inferences from those
facts, lead him to conclude that the person detained actually is, has been, or
soon will be engaged in criminal activity. 
The reasonableness of a temporary detention must be examined in terms of
the totally [sic] of the circumstances. 
The test for reasonable suspicion is not whether conduct is innocent or
guilty, but the degree of suspicion that attaches to noncriminal acts.








Now, therefore, before you consider the testimony of
Officers Harmon and Corley concerning their observations of the defendant after
his detention, you must first find beyond a reasonable doubt that the officer
had such reasonable suspicion, and if you do not find beyond a reasonable doubt
you will disregard such testimony.

 

Relying on this instruction, appellant contends his conviction was not
supported by sufficient evidence because his detention was unlawful.[2]

A.  Preliminary Issue

Despite appellant’s challenge to the evidence to support his “detention”
in the actual wording of his second and third points of error, he nevertheless
changes his focus in the text of his argument under point two, contending “the search
of the appellant for weapons during his detention was unlawful.”  (Emphasis added).  Similarly, under his third point of error,
appellant summarizes points of error two and three as follows:

In appellant’s second point of error appellant
challenges the sufficiency of the evidence introduced by the State to show
beyond a reasonable doubt that the appellant had been searched
lawfully.  Under this [third] point of
error, appellant urges this court to review the sufficiency of the evidence
under the ‘greater weight and preponderance of the evidence’ standard under Clewis.  (Emphasis added).

 








The jury was not given an instruction on the question of the
validity of the officer’s pat-down search of appellant.  Thus, the jury made no implied finding
regarding the search.  The jury was
charged on the issue of the lawfulness of appellant’s detention, and made,
through its verdict of guilty, an implied finding thereon.  See Coleman v. State, 45 S.W.3d
175, 178 (Tex. App.CHouston [1st Dist.] 2001, pet. ref’d) (stating when jury
charge contains an instruction derived from article 38.23(a), guilty verdict
means jury found the evidence supporting the conviction was not
illegally obtained).  We have overruled
appellant’s challenge to the trial court=s ruling on the motion to suppress
regarding the lawfulness of the search. 
Because no jury charge was presented on this issue, thus precluding any
implied finding thereon, appellant presents nothing for review beyond the
challenge we have already overruled.

B.  Legal Sufficiency

In point of error two, appellant challenges the “legal
sufficiency” of the evidence.  He asks
this court to review the evidence supporting the legality of his detention
under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.
Ct. 2781 (1979).  He has, however, not
cited any authority supporting his request to apply the Jackson standard
to the jury=s implied findings regarding the
legality of his detention.  There is good
reason he cannot do so.

Under the first sentence of article 38.23(a), the
admissibility of evidence is a matter for the court.  Pierce v. State, 32 S.W.3d 247, 251
(Tex. Crim. App. 2000).  The decision to
exclude evidence may be based on a ruling of law, a finding of fact, or
both.  Id.

Thus, the jury may not decide the question of law as to
whether the cocaine was admissible at trial as a threshold matter, but is
allowed, under the second sentence of article 38.23(a), to resolve contested
issues of fact about the obtaining of the evidence.  See id.  The jury is given a role to be a backup
protection against erroneous judicial rulings that have admitted evidence, not
to supplant them.  Id. at
253.  There is no issue for the jury when
the question is one of law only.  Id.
at 251.








Here, the jury was not addressing the admissibility of the
cocaine, but rather the question of whether the arresting officers had
articulable facts reasonably warranting appellant’s detention.  During trial, the officers gave their reasons
for suspecting appellant might be a drug courier, and appellant testified that
there were legitimate bases for everything he did while under surveillance at
the airport.  Because the jury was only
resolving the weight and credibility of the officers’ testimony to support
reasonable suspicion in light of the controverting testimony of appellant, the
jury=s implied finding in its guilty
verdict that the officers had reasonable suspicion to detain is only subject to
a factual sufficiency review. The jury’s finding that essential evidence was
not obtained in violation of the constitutions and laws of the United States
and of this State does not supplant the trial court=s ruling on appellant=s motion to suppress evidence.  Id. at 253.

In essence, appellant’s “legal insufficiency” argument is a
claim that the evidence of the cocaine should never have reached the jury.  Cf. Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000) (analyzing defendant=s claim of legal insufficiency as
claim evidence of his justification defense was so compelling, issue of his
guilt should never have been presented to jury for its consideration), cert.
denied, 532 U.S. 944, 121 S. Ct. 1407 (2001).  Appellant’s challenge in this regard is
therefore more appropriately addressed to the trial court’s legal determination
to admit the evidence.

Appellant could, and did in point one above, appeal the trial
court’s ruling on the suppression motion, arguing the officers lacked
reasonable suspicion to search appellant for weapons.  He has not, however, appealed the trial court=s implied matter of law ruling the
officers had reasonable suspicion to detain appellant.[3]

C.  Factual Sufficiency








            In point of error three,
appellant challenges the factual sufficiency of the evidence relating to the
legality of his detention.  In addressing
the jury’s implied finding appellant was legally detained, we apply the usual
standard for a challenge to the factual sufficiency of the evidence to support
a conviction.  See Coleman, 45
S.W.3d at 178.  In conducting a factual
sufficiency review, we do not view the evidence in the light most favorable to
the verdict.  Instead, we view the
evidence in a neutral light favoring neither party.  See Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996).  When, as
here, a defendant has put forth evidence contrary to the State=s evidence, the complete and correct
standard we must follow in conducting a Clewis factual sufficiency
review “asks whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury=s determination, or the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.”  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  In
conducting a factual sufficiency review, the appellate court must accord due
deference to the fact finder=s determinations, particularly those determinations
concerning the weight and credibility of the evidence.  Id. at 9.

A police officer may stop and briefly detain a person for
investigation if the officer has a reasonable suspicion supported by
articulable facts that criminal activity may be afoot.  Woods v. State, 956 S.W.2d 33, 35
(Tex. Crim. App. 1997) (citing Terry, 392 U.S. at 30, 88 S. Ct. at
1884).  Innocent behavior will frequently
provide the basis for a showing of reasonable suspicion; the relevant inquiry
is not whether particular conduct is innocent or criminal, but the degree of
suspicion that attaches to particular types of noncriminal acts.  See Woods, 956 S.W.2d at 38 (citing U.S.
v. Sokolow, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989)).  A court examines the reasonableness of a
temporary detention in terms of the totality of the circumstances.  Woods, 956 S.W.2d at 38.








The record reflects Officer Corley observed appellant arrive
at the airport by taxi and hurriedly enter the terminal.  Officer Harmon testified drug smugglers
usually arrive at the airport by taxi. 
In addition, appellant’s shirt and red pants were extremely baggy.  He acted nervous, and appeared to be looking
around to see whether anyone was watching him. 
Again, both officers testified this behavior is typical of drug
smugglers.  Once appellant entered the
terminal, he approached a ticket agent, walked away, approached a second ticket
agent, used a payphone, and returned to the second ticket agent.  Officer Corley spoke to the two ticket
agents.  The first agent informed Corley
appellant did not know to which city or on which airline he was flying.  The second agent stated appellant learned he
was flying to Toledo on American Airlines after he made the phone call.  Based on their training and experience,
Officer Harmon testified appellant’s arrival at the airport without knowing his
destination was Ahighly unusual.@

Moreover, when appellant approached American Airlines, he
appeared fidgety and continuously pulled down the front of his shirt.  There were no identification tags on
appellant=s luggage, and Harmon testified drug
smugglers do not tag their luggage to avoid tracing the luggage back to
them.  The officers obtained a copy of
appellant’s itinerary and learned appellant had missed an earlier flight.  Harmon became suspicious because drug
smugglers usually arrive at the airport just prior to their scheduled departure
to avoid law enforcement detection. 
Also, the officers learned the phone number listed on the appellant=s itinerary was not a working number,
and appellant=s identification number was invalid.  The officers found appellant sitting alone at
his departure gate with his suitcase in his lap.  Harmon explained drug smugglers often sit
alone to avoid communicating with others. 
Further, the officers found it unusual for appellant to sit with a large
suitcase on his lap because he had a lot of time before his plane was to
leave.  Based on these articulable facts,
the officers decided to approach appellant, introduce themselves, and speak to
appellant regarding his travel plans.








Appellant agreed significantly with much of the detailed
testimony of Officers Harmon and Corley regarding the events that transpired at
the airport.  However, appellant offered
some contrary evidence in an attempt to show Officers Harmon and Corley
detained appellant illegally. 
Specifically, appellant testified he knew he was flying to Toledo on
American Airlines, but his taxi driver, after being told to drive to American
Airlines, mistakenly dropped him off at the Continental Airlines terminal.  Appellant argues this was the reason he
appeared confused and agitated. 
Appellant stated he approached the two ticket agents in order to
determine where the American Airlines terminal was located.  Also, appellant asserts he did not make a
phone call to ascertain his destination; rather, he was calling an American
Airlines 1-800 number.  However, although
appellant introduced factors that may have cast doubt on his possible criminal
activity at the time the officers approached him, these factors do not
undermine the State’s evidence Officers Harmon and Corley specifically
articulated facts, personal to appellant, which taken together with rational
inferences from those facts, led them to conclude appellant was engaged in
criminal activity. 

Consequently, we hold the jury’s implied finding the officers
had reasonable suspicion based on specific and articulable facts to detain
appellant is not greatly outweighed by appellant=s contrary proof to the extent that
the contrary finding is clearly wrong and unjust.  See Johnson, 23 S.W.3d at 11.  Therefore, we hold there is factually
sufficient evidence to support the jury=s implied finding appellant was
legally detained.

We overrule appellant=s second and third points of error.[4]




We affirm the judgment of the trial court.

 

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered
and Majority and Concurring Opinions filed July 25, 2002.

Panel consists of
Justices Anderson, Hudson, and Seymore. (Hudson, J., concurring).

Publish C Tex.
R. App. P. 47.3(b).








Affirmed and Majority and Concurring Opinions filed
July 25, 2002.

 




 
 
 
 
 
 
 




 

 

 

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-00-00699-CR

____________

 

TIMOTHY M. KENDRICK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 803,335

 



 

C O N C U R R I N G   O
P I N I O N

In his first point of error, appellant directly challenges
the trial court’s implied holding that under the facts presented here the
police had reasonable suspicion to conduct a “pat down” search for
weapons.  In his second and third points
of error, appellant makes a related attack by challenging the sufficiency of
the evidence to support the jury=s implied finding that the police had
reasonable suspicion to search for weapons.








I join the majority in concluding that appellant consented to
the search, and thus agree that the first point of error is without merit.  Moreover, I have no quarrel with the majority’s
conclusion that the evidence is sufficient to support the jury’s implied
finding that the police had reasonable suspicion to search for weapons.  I write separately only because appellant was
not entitled, in my view, to have the issue of reasonable suspicion presented
to the jury.

A trial court is not required to give an Article 38.23
instruction where the objection to the evidence requires a legal, rather than a
factual determination.  Crunk v. State,
934 S.W.2d 788, 794 (Tex. App.CHouston [14th Dist.] 1996, pet. ref’d).  Here, appellant did not challenge the
credibility of the police officers or dispute their testimony regarding the
various circumstances observed by or represented to them.  Rather, appellant offered exculpatory
explanations for his behavior and challenged the correctness of the information
relayed to officers by the ticket agents. 
In determining the existence of reasonable suspicion, an objective
standard is utilized:  would the facts
available to the officer at the moment of seizure or search warrant a man of
reasonable caution in the belief that the action taken was appropriate.  Garcia v. State, 3 S.W.3d 227, 233 (Tex.
App.CHouston [14th Dist.] 1999), aff’d,
43 S.W.3d 527 (Tex. Crim. App. 2001). 
Because no fact issue was raised by appellant, he was not entitled to an
Article 38.23 instruction.  Moreover, the
legal issue regarding the existence of reasonable suspicion was solely for the
court, not the jury, to resolve.  Accordingly,
appellant should not be heard to complain that the jury’s determination of
reasonable suspicion was not supported by the evidence.

With these observations, I concur in the judgment of the
court.

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

Judgment rendered
and Majority and Concurring Opinions filed July 25, 2002.

Panel consists of
Justices Anderson, Hudson, and Seymore.

Publish C Tex.
R. App. P. 47.3(b).











[1]  In his first
point of error, appellant does not contest the lawfulness of his initial
detention, instead complaining only about the lawfulness of the pat-down search
which followed his detention. 
Accordingly, in addressing appellant=s first
point of error, we assume the detention was legal and limit our review to the
legality of the pat-down search of appellant.





[2]  Appellant=s second and third points of error are virtually
identical, except for the distinction between legal and factual sufficiency of
the evidence.  Point of error two is as
follows:

 

The evidence was insufficient to support the appellant [sic] conviction
for possession of cocaine with the intent to deliver, as a matter of law, where
the jury was authorized to consider the legality of the appellant=s detention, and where the detention was
unlawful.  (Emphasis added).





[3]  Had appellant
submitted such issue on appeal, we would have reviewed de novo the trial
court=s application of the relevant Fourth Amendment
standards.  Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000)





[4]  We do not
interpret appellant to be arguing inclusion of the Rule 38.23(a) instruction
added an additional Aelement@ to the
offense, which would be subject to both legal and factual sufficiency
analysis.  If this is indeed appellant=s argument, the argument was rejected in Hollie v.
State, 962 S.W.2d 302, 303B 04 (Tex. App.CHouston
[1st Dist.] 1998), pet. dism=d
as improvidently granted, 984 S.W.2d
263 (Tex. Crim. App. 1999) (per curiam).